UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MASUD HANNAN,

              Plaintiff,                                Civil No. 09-414-HA

              v.                                OPINION AND ORDER

MAXIM INTEGRATED PRODUCTS,
INC., a Delaware corporation; The Estate of
JOHN F. GIFFORD; and CARL W. JASPER,
an individual,

              Defendants.

HAGGERTY, District Judge:

       Plaintiff asserts claims for breach of contract, breach of duty of good faith and fair dealing,

intentional interference with economic relations, penalty wages, and securities fraud.  Defendants

moved separately for dismissal pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(2) and

12(b)(6).  Defendant Jasper requests this court to take judicial notice of two exhibits along with his

motion, Maxim's Stock Option Agreement and Maxim's Form 8-K, both required to be filed with the

Securities and Exchange Commission (SEC).  The court grants this request because SEC filings are

proper documents for judicial notice.  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d

1049, 1064 n.7 (9th Cir. 2008) (confirming that district court properly took judicial notice of

publicly available financial documents and SEC filings).

1 - OPINION AND ORDER

Plaintiff has also submitted sur-replies to each defendant's motion. Although the court usually does not entertain additional briefing, the court has considered plaintiff's sur-replies and finds that they do not alter the court's determination. The court has determined that oral argument on this motion is unnecessary. For the following reasons, the Estate of John F. Gifford's [4], Maxim Integrated Products, Inc.'s [6], and Carl W. Jasper's [9] Motions to Dismiss are granted.

**BACKGROUND**

Plaintiff is a resident of Oregon who was employed by Maxim Integrated Products, Inc. (Maxim) from April 15, 1999 through February 16, 2007. Maxim is a Delaware corporation with its principal place of business in California.

As part of plaintiff's employment, he was granted a non-qualified stock option to purchase 20,000 company shares at an exercise price of $23.6563 per share as part of Maxim's 1996 Stock Incentive Plan. Plaintiff asserts that the stock options were the most important compensation factor for plaintiff's employment with Maxim. Plaintiff exercised 6,000 of his 20,000 stock options in 2003 and the remaining options were fully vested as of July 21, 2004. Plaintiff's stock options were subject to several conditions, including that the plaintiff's right to exercise his options was contingent upon Maxim's ability to file reports with the SEC.

Maxim underwent a lengthy review of its stock options practice from 2006 to 2008. During this time, Maxim was unable to file reports with the SEC and a blackout period was imposed, during which Maxim could not issue stock.

Plaintiff contacted Maxim's broker on September 18, 2006 to initiate a same day sale for his 14,000 vested shares and was notified that the stocks were temporarily frozen. Plaintiff again contacted Maxim's broker on March 15, 2007 and was told that his options were blocked until Maxim became current with its financial reporting. In early October 2008, Maxim notified its current and former employees that the blackout period ended and gave them ninety days (until

December 29, 2008) to exercise their options.  However, by this time, plaintiff's options were well below the strike price and were worthless.

Jasper is a resident of San Jose, California who worked as Chief Financial Officer (CFO) for Maxim at its headquarters in Sunnyvale, California.  Jasper alleges that he does not own property in Oregon, does not have any financial accounts in Oregon, does not pay taxes in Oregon, and has never voted in Oregon.  He asserts that he has visited Oregon only once for business and approximately ten times for personal vacations.

Prior to his death, Gifford was a resident of California and served as Chief Executive Officer (CEO) for Maxim.  The Estate asserts that Gifford never resided in Oregon, never owned property in Oregon, and had no personal contacts with Oregon.

## II.    STANDARDS

### 1.    Personal Jurisdiction

Plaintiff bears the burden of establishing that this court has personal jurisdiction over defendants.  *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996) (stating that the nonmoving party has the burden of establishing personal jurisdiction).  Plaintiff need only make a prima facie showing of facts that support exercising jurisdiction over defendants. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006).

Personal jurisdiction over a non-resident defendant is tested under a two-prong analysis.  The exercise of jurisdiction must: (1) satisfy the requirements of the long-arm statute of the state in which the district court sits; and (2) comport with the principles of federal due process. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  Oregon Rule of Civil Procedure (ORCP) 4(B)-(K) provides specific bases for personal jurisdiction and subsection (L) extends jurisdiction to the limits of due process under the United States Constitution. *Nike, Inc. v. Spencer*, 707 P.2d 589, 591 (Or. Ct. App. 1985); *see* ORCP 4.

3 - OPINION AND ORDER

The Due Process Clause of the U.S. Constitution protects persons from being subject to the binding judgments of a forum with which they have "established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).   Due process requires that a defendant have "minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co.*, 326 U.S. at 316).   "A court may exercise either general or specific jurisdiction over a nonresident defendant." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted).

For a defendant to be subject to general personal jurisdiction, the defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (citation omitted).  The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." *Tuazon*, 433 F.3d at 1169 (citation omitted).  Unless the defendant can be deemed "present" within the forum for all purposes, general jurisdiction is not appropriate. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

Alternatively, specific jurisdiction exists where: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed herself of the privileges of conducting activities in the forum; (2) the claim arises out of, or results from, the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citation omitted).  If the plaintiff meets the first and second elements, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).  However, if the plaintiff

fails at the first step, then the jurisdictional inquiry ends and the defendant must be dismissed from the case. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

To establish purposeful availment for specific jurisdiction, the defendants must have performed some affirmative conduct within the forum state. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (citation omitted). A foreign act aimed at the forum state can satisfy the purposeful availment prong if the defendant: "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft & Masters*, 223 F.3d at 1087 (citation omitted). Plaintiff can also establish purposeful availment if he demonstrates that the defendants' wrongful conduct was targeted at the plaintiff whom the defendants know to be a resident of the forum state. *Id.*

### 2.    Failure to State a Claim

Generally, dismissal for failure to state a claim under FRCP 12(b)(6) is denied "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim" that would entitle the plaintiff to relief. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). For the purposes of resolving a motion to dismiss, the complaint must be construed liberally in favor of the plaintiff, and the complaint's allegations must be accepted as true. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004) (citation omitted). Accordingly, a motion to dismiss for failure to state a claim may be granted only if, accepting all well-pled allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the plaintiff is not entitled to relief. *Id*.

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted).  Factual allegations must be more than just speculative even when all allegations in the complaint are taken as true.  *Id*.  This court's review is limited to the face of the complaint, documents referenced by the complaint, and matters of which this court may take judicial notice.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).

## III.    ANALYSIS

Defendants Jasper and the Estate move to dismiss plaintiff's complaint based on a lack of personal jurisdiction and plaintiff's failure to state his claims of intentional interference with economic relations and breach of Oregon's Securities Law.  Defendant Maxim moves to dismiss plaintiff's complaint for failure to state claims of breach of contract, breach of duty of good faith and fair dealing, and Oregon's wage law.

### 1.    Personal Jurisdiction as to Jasper and the Estate

Plaintiff alleges that Jasper's and Gifford's conduct as officers of Maxim provides a sufficient basis to subject them to jurisdiction in Oregon.  Both defendants assert that plaintiff has failed to allege any facts to satisfy general or specific jurisdiction.

Plaintiff fails to demonstrate the substantial and continuing contacts necessary to create general jurisdiction as to Jasper or the Estate.  Neither defendant has ever lived or worked in Oregon, they do not own property in Oregon, and they have no personal contacts with Oregon.  Plaintiff cannot demonstrate that Jasper or Gifford had enough contacts in Oregon to approximate a presence, therefore, general jurisdiction is improper.  Additionally, Jasper's occasional vacations to Oregon are insufficient to establish general jurisdiction.  *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 2001) *overruled on other grounds by* 28 U.S.C. § 1961 (2006) (stating that occasional business or vacation trips cannot constitute "conducting business" within a state to support general jurisdiction).

Plaintiff asserts that jurisdiction against the individual defendants is proper pursuant to ORCP 4(G) because Jasper and Gifford were each an "officer or director of a domestic corporation where the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director or officer."  *See* ORCP 4(G).  Plaintiff contends that the definition of "domestic corporation" is not limited to businesses incorporated in Oregon, and that because Maxim is licensed to do business in Oregon, jurisdiction is proper for Jasper and the Estate.  Additionally, plaintiff asserts that ORCP 4(J) provides proper jurisdiction because Jasper's and Gifford's conduct violated Oregon's Securities Law.  *See* ORCP 4(J) (providing for jurisdiction "[i]n any action arising under the Oregon Securities Law, . . . against . . . [a]ny person, a resident or nonresident of this state, who has engaged in conduct prohibited or made actionable under the Oregon Securities Law.").

Jasper and the Estate respond that ORCP 4(G) is inapplicable because Maxim is not a domestic corporation.  Pursuant to Oregon Revised Statute (ORS) 60.001, a corporation is foreign if it is "incorporated under laws other than the laws of this state." Or. Rev. Stat. § 60.001(15) (defining foreign corporation); *see* ORS 60.001(5) (stating that a domestic corporation "is not a foreign corporation").  Because Maxim is incorporated under the laws of Delaware, Maxim is not considered a domestic corporation under Oregon law and personal jurisdiction is inappropriate under ORCP 4(G).

Although plaintiff's fifth claim for relief arises under ORS 59.135 of Oregon's Securities Law, plaintiff has failed to meet the heightened pleading requirements necessary for a fraud claim. *See Andreson v. Hunt*, No. 90-35455, 1991 WL 268716, at *2-3 (9th Cir. Dec. 16, 1991) (holding that district court properly dismissed claim under ORS 59.135 for failure to plead fraud with particularity).  Even if plaintiff had adequately pled a claim under Oregon's Securities Law, personal jurisdiction also fails because plaintiff has not demonstrated that the exercise of jurisdiction

7 - OPINION AND ORDER

comports with principles of due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 and n.1 (9th Cir. 1990) (stating that plaintiff must show exercise of jurisdiction based on long-arm statute does not violate federal due process).

Specific jurisdiction as to Jasper and the Estate is inappropriate because purposeful availment is lacking in this case. Even assuming that plaintiff's factual allegations are truthful, plaintiff has only alleged that Jasper and Gifford made misrepresentations to the SEC, prepared and certified false statements filed with the SEC, and participated in a backdating scheme. Plaintiff failed to allege that any of these actions occurred in Oregon or were aimed at Oregon.

Plaintiff instead relies on *State v. Houston*, 600 P.2d 886 (Or. Ct. App. 1979), to demonstrate that both Jasper's and Gifford's official conduct created sufficient contacts in Oregon to justify jurisdiction. However, the corporate officer in *Houston* formed and registered the corporation to do business in Oregon, dealt directly with Oregon on behalf of the corporation, and made representations to Oregon's Corporation Commissioner on behalf of the corporation. *Houston*, 600 P.2d at 890. Based on the officer's significant dealings with Oregon, the court found that he reasonably could expect to defend himself in an Oregon court. *Id.* In contrast, plaintiff has only asserted that Jasper and Gifford falsified documents to the SEC regarding Oregon assets. These alleged acts do not mirror the significant contacts in *Houston* nor do they form a reasonable basis for Jasper or the Estate to expect to defend a case in Oregon.

Moreover, plaintiff cannot use Jasper's and Gifford's contacts with Oregon in their official capacities as CFO and CEO of Maxim to support personal jurisdiction. An individual defendant cannot be subjected to jurisdiction in a forum when his or her only contact with the state is through the performance of his or her official duties for the corporation. *Forsythe v. Overmyer*, 576 F.2d 779, 783-84 (9th Cir. 1978); *see also Krasno Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379-80 (9th Cir. 1981) (holding that personal jurisdiction was improper when the non-resident defendant's sole

8 - OPINION AND ORDER

contacts with the state were in his capacity as president of the corporation).  Jasper and Gifford do

not have sufficient minimum contacts with Oregon apart from their official conduct for Maxim to

justify personal jurisdiction against them.

Because plaintiff failed to demonstrate any purposeful availment by Jasper or the Estate, the

court need not analyze the remaining jurisdictional factors.  *See Boschetto*, 539 F.3d at 1016.

Jasper's and the Estate's Motions to Dismiss are granted for lack of personal jurisdiction.

Accordingly, the court will not analyze the merits of plaintiff's intentional interference with

economic relations or fraud claims against Jasper and the Estate.

### 2.    Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

The contract at issue is the Notice of Grant of Stock Options and Option Agreement executed

by plaintiff and Maxim on March 11, 1999.  Maxim presumes for the purposes of this motion that

Oregon law governs the contract.  Under Oregon law, "if the provisions of a contract are clear and

unambiguous it is the function of the court to interpret the contract and declare its legal effect."

*Rolfe v. N.W. Cattle & Res., Inc.*, 491 P.2d 195, 200 (Or. 1971).  Unambiguous terms should be

interpreted according to their plain meaning.  *Value Mobile Homes, Inc. v. Bank of Am. Or.*, 887

P.2d 382, 389 (Or. Ct. App. 1994) (citation omitted).

The contract provides that all terms in the option agreement between Maxim and plaintiff are

governed by the "Legal Provisions" and the 1996 Stock Incentive Plan ("Plan").  *See* Compl. Ex. A

at 1.  Plaintiff contends that he never received a copy of the Legal Provisions and has insufficient

knowledge regarding whether the provisions are part of the option agreement.  However, plaintiff

signed the acknowledgment of receipt of these provisions as part of the option grant, so this court

presumes that the Legal Provisions and the Plan form the option agreement between plaintiff and

Maxim.  *See* Compl. Ex. A at 1.

Paragraph 14(b) of the Plan provides that:

> The inability of the Company to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and sale of any Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue or sell such Shares as to which such requisite authority shall not have been obtained.

Compl. Ex. B at 13. The Plan further states that "[s]hares shall not be issued pursuant to the exercise of an Option unless . . . the issuance and delivery of such Shares pursuant thereto shall comply with all Applicable Laws," including federal and state securities laws. Compl. Ex. B at 1, 11. Similarly, paragraph five of the Legal Provisions provides that:

> [T]he Option may not be exercised unless the Shares issuable upon exercise of this Option are then registered under the Securities Act of 1933 . . . or, if such Shares are not then so registered, the Company has determined that such exercise and issuance would be exempt from the registration requirements of the Act.

Specially Appearing Def. Carl W. Jasper's Req. for Judicial Notice (Jud. Not.), Ex. A at 3. Maxim argues that these provisions both shield it from any liability for its failure to issue shares to plaintiff and demonstrate that it has fully complied with the terms of the agreement.

Although plaintiff asserts that the blackout on the exercise of his shares was self-imposed by Maxim as a result of its officers' illegal backdating scheme, the alleged misconduct of its officers does not invalidate the contract's express condition that shares can only be issued when they are registered with the SEC. According to the plain language of the contract, Maxim was prohibited from issuing stock when the shares were unregistered with the SEC. Paragraph 14(b) of the Plan appears to anticipate a regulatory blackout, such as the one imposed in this case, and releases Maxim from liability for its failure to issue stock during a blackout period. Even while accepting all of the Complaint's allegations as true, Maxim still complied with the express terms of the contract even though plaintiff was unable to exercise his remaining stock options. Maxim's Motion to Dismiss is granted for the breach of contract claim.

Accordingly, because Maxim complied with the express terms of the contract, plaintiff's claim for breach of duty of good faith and fair dealing must also be dismissed. *See Zygar v. Johnson*, 10 P.3d 326, 330 (Or. Ct. App. 2000) (stating the implied covenant of good faith cannot contradict the express terms of the contract nor present a remedy for conduct consistent with the express terms of the contract).

### 3.    Wage Penalty Claim

Plaintiff alleges Maxim violated ORS 652.610 and ORS 652.140 by failing to provide all of his wages when he terminated his employment with Maxim. Plaintiff asserts that he did not receive "all wages earned and unpaid at the time of quitting," and that Maxim unlawfully withheld a "portion of [plaintiff's] wages" or "any sum of money from the wages, salary or commission earned by [plaintiff]." *See* ORS 652.140(2); ORS 652.610. Oregon defines wages as "all compensation for performance of service by an employee for an employer, whether paid by the employer or another person, including cash value of all compensation paid in any medium other than cash." ORS 652.210(5).

Plaintiff characterizes his stock options as wages because they were "part of [plaintiff's] total pecuniary compensation." Compl. ¶ 47. He contends that because other non-cash assets are considered wages, such as unpaid vacation, commissions, and pension benefits, then stock options should also be deemed wages. *See Kantor v. Boise Cascade Corp.*, 708 P.2d 356, 363-64 (Or. Ct. App. 1985) (citations omitted).

Although not expressly decided by an Oregon court, Maxim cites many authorities outside Oregon to support its claim that stock options are not wages. Maxim Mem. at 14. Within the Ninth Circuit, California and Idaho courts have decided that stock options should not be considered wages under their state's wage statutes. *See Paolini v. Albertson's Inc.*, 482 F.3d 1149, 1152-53 (9th Cir. 2007) (holding that because Idaho Supreme Court determined stock options are not wages, state

11 - OPINION AND ORDER

wage law violation and breach of good faith claim must be dismissed); *Falkowski*, 309 F.3d at 1132 (dismissing wage violation claim because stock options are not wages under California law); *Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1039 (9th Cir. 1999) (holding that stock options are not wages in California because they are not "money" or "amounts," but rather "[t]hey are contractual rights to buy shares of stock").  This court agrees with this reasoning and finds that stock options are contractual rights to buy stocks at a certain price and are not wages under Oregon's penalty wage statutes.

Moreover, plaintiff fails to establish a contractual basis for his right to exercise the options at a particular price.  *Leonard v. Arrow-Tualatin, Inc.*, 708 P.2d 630, 632 (Or. Ct. App. 1985) (stating plaintiff must prove agreement giving right to compensation to prevail under wage claim).  No guarantee existed that the stock would maintain value above the strike price, and at the time plaintiff quit, Maxim was not obligated to provide plaintiff with value for his options.  *See Marshall v. Wells Capital Mgmt. Inc.*, No. 07-309-HU, 2007 WL 4565164, at *4 (D. Or. Dec. 19, 2007) (holding that "stock options themselves create no payment obligation on behalf of the grantor").  Accordingly, Maxim's Motion to Dismiss is granted for the wage penalty claim.

## CONCLUSION

For the foregoing reasons, the Estate's [4], Maxim's [6], and Jasper's [9] Motions to Dismiss are GRANTED and this case is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated this   10    day of August, 2009.


   /s/ ANCER L. HAGGERTY
        ANCER L. HAGGERTY
      United States District Judge